IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Titan Tire Corporation of Bryan,                    Case No. 3:08 CV 2957

                        Plaintiff,                  MEMORANDUM OPINION
                                                    AND ORDER
            -vs-
                                                    JUDGE JACK ZOUHARY
Local 890L, United Steelworkers of America,

                        Defendant.


### INTRODUCTION

The issue in this case is whether an arbitrator exceeded his authority in reversing an employer's decision to discharge an employee who, following an accident, tested positive for marijuana. Instead of discharge, the arbitrator ordered the employee suspended for ninety days and returned to work. The parties have filed Cross-Motions for Summary Judgment (Doc. Nos. 12, 14). The matter has been briefed by the parties (Doc. Nos. 12, 14-16), and the Court held a hearing on August 7, 2009 (Doc. Nos. 17-18, 21).

### FACTS

In August 2006, Titan Tire of Bryan (Titan) purchased the rubber plant in Bryan, Ohio from Continental General Tire, Inc. (Continental). During the purchase of the plant, Titan entered into negotiations with the Steelworkers Local 890L (Union) culminating in a Collective Bargaining Agreement (CBA) between Titan and the Union. In order to fast-track negotiations, the CBA adopted many of the same provisions contained in the previous agreement between Continental and the Union.

Several "Letters of Understanding" (Letter) were attached to the CBA. In Letter 44, entitled "Controlled Substance Policy," Titan agreed to adopt in full Continental's "Controlled Substances and Alcohol Testing Program." The Policy prohibits the use of numerous drugs, including "[m]arijuana, [h]ash and other cannabis extracts or synthetic equivalents." The Policy also outlines the testing procedures for drugs and alcohol, stating in pertinent part "[e]mployees involved in an Occupational Safety and Health Administration recordable accident will be tested for drugs and alcohol as soon as possible after the accident."

The CBA contains several provisions relating to the consequences of breaching the Controlled Substances Program. The Policy provides "[a]n individual testing positive for controlled substances . . . will be subject to termination." Article XVII, Section 17.13 of the CBA states "[a]nyone reporting to work in violation of the parties' Controlled Substance and Alcohol Testing Policy, will be subject to appropriate disciplinary action." Article VI, Section 6.05(b) provides "[s]eniority will be broken for the following reason: discharge for just cause." In addition, Letter 42 provides generally for "progressive" disciplinary action.

The Policy also contains a section requiring Titan to educate employees on the consequences of a positive drug test. Section V provides that hourly employees "[] will be provided informational materials that explain the Company Drug and Alcohol Policies," and that "[c]onsequences for employees found to have a specified alcohol level or a positive controlled substance will be included."

On March 8, 2008, Linda Tracy (Tracy) injured her wrist while working at the plant. Tracy, a Union member, was sent to the hospital, where she was tested for drugs and alcohol. On her second test, Tracy tested positive for marijuana, and later admitted smoking marijuana during the week of March 2, 2008. On March 14, 2008, Titan fired Tracy.

2

On March 18, 2008, the Union filed a grievance, claiming Tracy's termination was "excessive and unjust."  On August 14, 2008, her termination was submitted to arbitration.  Titan and the Union agreed the issue for arbitration was "[d]id the penalty comport with just cause . . . and was it procedurally consistent with the Controlled Substance Memorandum of Understanding and Program?"

On October 16, 2008, arbitrator Jonathan Dworkin issued his award.  He found that "just cause is the Contract's overriding criterion for deciding if the discipline at issue will be upheld, modified, or set aside."  He further found that Titan's decision to terminate Tracy "did not adhere to just cause criteria," mainly because Titan had failed to provide adequate notice to employees of its drug testing policy.  The arbitrator modified the termination to "a disciplinary suspension of ninety calendar days."

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The sole issue in this case -- whether an arbitrator has exceeded his authority -- is a question of law.  *See MidMichigan Reg'l Med. Ctr.-Clare v. Prof'l Employees Div. of Local 79, Serv. Employee Int'l Union*, 183 F.3d 497, 501 (6th Cir. 1999).

In reviewing arbitration awards, the federal courts are "very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator."  *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960).  However, the arbitrator is not all-powerful but "is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."  *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  Thus, the review of arbitration awards "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."

*Id.*  As long as the arbitrator is "even arguably construing or applying the contract," a court must enforce the arbitration award, even if the court is "convinced [the arbitrator] committed serious error." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

The Sixth Circuit has distilled relevant Supreme Court precedent into a three-part test for a federal court's review of an arbitration award:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?  And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007).  A court should be cautious that an arbitration decision is not "so ignorant of the contract's plain language . . . as to make implausible any contention that the arbitrator was construing the contract." *Id.* (quotations omitted).  Still, a court must even accept an arbitrator's "serious, improvident or silly" errors, and overturning an arbitration award "should be the rare exception, not the rule." *Id.* (quotations omitted).

## DISCUSSION

The dispute turns on the third prong of the *Michigan Family Resources* test: Was the arbitrator arguably construing or applying the contract?  Plaintiff argues the arbitrator "acted outside the scope of the contract" (Hearing TR 3-4).  Specifically, the parties dispute the arbitrator's interpretation of the phrase "subject to termination."  Titan argues that the phrase means Tracy "will be terminated" if she violates the company's drug policy, and that the arbitrator impermissibly went outside the bounds of the CBA in finding otherwise.  The Union contends that the phrase does not make termination automatic, and, as the arbitrator found, termination requires just cause.  Titan in turn agrees that "the only ability to terminate is for just cause" (TR 13-14).

4

In interpreting the phrase "subject to termination," the arbitrator cited evidence from negotiations between Continental (Titan's predecessor) and the Union (Doc. No. 12, Ex. 2, p. 16). That evidence showed that Continental had proposed the language "will be terminated" for employees who violate relevant provisions of the drug policy. Union negotiators offered the phrase "subject to termination" as a compromise, and that phrase was adopted in the final CBA. In light of this negotiating history, the arbitrator found that "subject to termination" did not mean automatic discharge.

Titan argues this method of interpretation was explicitly prohibited by Article 19.04 of the CBA, which required the Union to provide Titan with a thirty-day notice of any attempt to use oral agreements between Continental and the Union in drafting the CBA. Article 19.04 states that Titan cannot be bound by such oral understandings unless Titan has agreed in writing to be so bound.[1] Titan therefore argues that the arbitrator, by looking to the CBA's negotiating history, was not arguably construing or applying the contract as written; rather, he violated its express terms.

---

[1]

This Court is troubled by the lack of a record of the hearing before the arbitrator. Although Titan argues that it objected to the arbitrator taking testimony on the intent behind the CBA language at issue, this Court has no record that supports that assertion (TR 5). When asked why there was no record, counsel for Titan indicated that historically an arbitration record had not been kept, and that the Union did not dispute that an appropriate objection had been made (TR 10). That may well be, but that does not assist this Court in reviewing this arbitrator's decision. *Cf. Smith v. Yarrow*, 137 F. App'x 778, 780 (6th Cir. 2005) (noting, in the context of appellate review of a district court proceeding, "Without a transcript, this court cannot verify that [the appellant] made a proper objection . . . or examine the explanation, if any, the district may have provided for its decision on the record."). Nevertheless, this Court finds that the question presented in this case can be decided on the basis of the plain language of the CBA without reliance on Article 19.04.

There is an initial hurdle Titan must clear before this Court can address whether the arbitrator violated the terms of Article 19.04: namely, whether the plain language of the phrase "subject to termination" means "will be terminated."  If "subject to termination" requires automatic termination, then the arbitrator may have overstepped his authority by finding a just cause requirement.  However, if the plain meaning of "subject to termination" (regardless of negotiating history) means "may or may not be terminated," then it was permissible for the arbitrator to decide the question of just cause.

Titan urges that "subject to termination" is susceptible of only one meaning: the employee "will be terminated" if testing positive for drugs following an accident.  This Court is unpersuaded. "Subject to" means "suffering from a particular liability or exposure" or "likely to be . . . affected . . . in some indicated way."  *Webster's Third New International Dictionary* (1986).  "Subject to" thus implies a contingency.  An employee who smokes marijuana is "subject to" criminal prosecution and "subject to" brain damage; that does not mean criminal prosecution and brain damage are certain to occur.  Similarly, an employee "subject to termination" may, or may not, be terminated.  The plain meaning of the CBA indicates that permanent discharge is an option for employees testing positive for drugs, but it is not automatic.

Because the plain language of the CBA does not support Titan's contention that termination is automatic, the arbitrator was justified in reaching the issue of just cause.  The arbitrator concluded that "just cause is the Contract's overriding criterion for deciding if the discipline at issue will be upheld, modified, or set aside" (Doc. No. 12, Ex. 2, p. 20).  That conclusion was based on a provision in the CBA referring to "discharge for just cause" and a Letter providing for progressive discipline

6

(Doc. No. 12, Ex. 2, p. 10-11).[2]  The arbitrator found that termination of Grievant did not comport with just cause standards, and ordered a ninety day suspension in lieu of termination.

Although not cited by either party, this Court finds instructive the Sixth Circuit's opinion in *Truck Drivers Local No. 164 v. Allied Waste Sys.*, *Inc.*, 512 F.3d 211 (2008) (decided after *Michigan Family Resources*).  In that case, an arbitrator used a CBA's "just cause" provision to reinstate an employee who had been terminated by his employer for disciplinary purposes, even though the CBA provided "the degree of discipline imposed for just cause shall be the sole discretion of management and shall not be subject to modification by an arbitrator." *Id.* at 215. The arbitrator reasoned that the just cause provision allowed him to consider the reasonableness of the discipline, notwithstanding the clause purporting to remove the arbitrator's authority to modify disciplinary decisions. *Id.* The Sixth Circuit upheld the arbitrator's decision, noting that the arbitrator "referred to, quoted from, and analyzed the pertinent provisions of the agreement." *Id.* at 220.  The arbitrator was "indisputably construing and applying the contract" and therefore passed muster under the *Michigan Family Resources* test. *Id.*

Here, it is likewise indisputable that the arbitrator was construing and applying the CBA.  His opinion cited and analyzed particular provisions of the CBA relevant to the just cause standard, as well as the "subject to termination" language that is the subject of the parties' dispute.  Indeed, the

---

[2]

The arbitrator noted that he could have reasonably inferred a just cause provision in the CBA, but that he did not have to make such an inference because just cause was embodied in the text of the CBA (Doc. No. 12, Ex.2, p. 10).  Given the considerable deference due the arbitrator's interpretation, this Court will not disturb that conclusion on review.  Whether based on inference or the actual text of the CBA, finding a just cause requirement for termination was a permissible interpretation. Morever, Titan has not offered any objections to this part of the arbitrator's opinion.  Indeed, Titan's arguments during arbitration undercut its current position that the arbitrator should never have reached the just cause issue.  The agreed question submitted for arbitration read, in part, "[d]id the penalty comport with just cause," and much of Titan's brief to the arbitrator dealt with exactly that question.  Finally, Titan's counsel conceded at oral argument that "the only ability to terminate is for just cause under the contract" (TR 13-14).

arbitrator in this case was on more solid ground than the arbitrator in *Truck Drivers,* who was confronted with a contractual provision purporting to strip him of authority to modify disciplinary decisions.  The phrase "subject to termination," in contrast, says nothing about the power of the arbitrator to modify that decision; if anything, it invites the arbitrator to review management's discretionary decision about whether to terminate.  If a just cause provision allows an arbitrator to modify a disciplinary decision when the contract tells him not to (as in *Truck Drivers*), it surely allows an arbitrator to do the same when confronted with a loose phrase like "subject to termination."

This conclusion is bolstered by a pre-*Michigan Family Resources* Sixth Circuit decision upholding an arbitration decision which found that the phrase "subject to discharge," coupled with a "just cause" provision, does not require automatic discharge.  *See Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 892-93 (6th Cir. 1989); *see also B.P. Products N. Am. v. PACE*, 2003 U.S. Dist. Lexis 8099 at *20-23 (N.D. Ohio 2003) (concluding that arbitrator permissibly used a "just cause" provision to reinstate an employee who was "subject to discharge"); *but see Warrior & Gulf Navigation Co. v. United Steel Workers of Am., AFL-CIO-CLC*, 996 F.2d 279, 281 (11th Cir. 1993) (finding that an agreement providing that an employee failing two drug tests is "subject to immediate termination" gave management complete discretion to fire the employee, which arbitrator could not overrule).

### CONCLUSION

In sum, the arbitrator permissibly interpreted the CBA to require just cause for Tracy's termination.  Even if citing the negotiating history between Continental and the Union was error, such error was harmless, because the language of the CBA, by itself, could justify the arbitrator's conclusion.  *See Michigan Family Resources*, 475 F.3d at 755 ("That [the arbitrator] chose the wrong path in justifying the award . . . does not give [a reviewing court] a warrant to vacate it.").

8

Furthermore, the arbitrator's conclusion that there was not just cause to terminate was reasonable. His finding that Titan had failed to provide adequate notice to its employees of the drug policy was amply supported by the record.  Titan has not objected to this part of the arbitrator's opinion, instead arguing that the arbitrator should never have reached the just cause question.  The plain language of the CBA suggests otherwise, and the arbitrator therefore did not overstep his authority in ordering a suspension rather than termination.

Titan fails to meet the standard under *Michigan Family Resources* for vacating this labor arbitration award.  This case does not fall into one of those few exceptions which would justify reversal of the award.  Accordingly, the arbitrator's award is affirmed.  Plaintiff's Motion for Summary Judgment (Doc. No.12) is denied and Defendant's Motion for Summary Judgment (Doc. No. 14) is granted.

IT IS SO ORDERED.

_____s/ Jack Zouhary_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 26, 2009

9